579 So.2d 494 (1991)
Valerie Ashmore PACE and Anthony G. Keko, d/b/a Keko's Seafood
v.
CHEVRON, U.S.A., INC., C.F. Bean Corporation, Wade Grant Fennell and the Travelers Insurance Co.
LEATHERNECKS, INC.
v.
CHEVRON, U.S.A., INC., C.F. Bean Corporation, and Wade Grant Fennell.
Nos. 90-CA-1755, 90-CA-1756.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1991.
*495 Harry T. Widmann, New Orleans, for plaintiffs/appellants.
Timothy F. Burr, Michael W. Magner, Galloway, Johnson, Tompkins & Burr, David M. Culpepper, Murray A. Calhoun, Milling, Benson, Woodward, Hillyer Pierson & Miller, New Orleans, for defendants/appellees.
Before GARRISON, ARMSTRONG and PLOTKIN, JJ.
GARRISON, Judge.
This appeal arises out of an incident which occurred on February 27, 1987. On that date Wade Grant Fennell on a vessel owned by C.F. Bean Corporation was performing dredging operations on behalf of Chevron, U.S.A., Inc. Anthony Keko, a principal shareholder of Leathernecks, came aboard the dredge without permission. He claimed that Leathernecks' oyster beds had been damaged by the dredging operation. Mr. Keko then assaulted Mr. Fennell.
On February 29, 1988, Mr. Keko filed suit against Chevron, Fennell and Bean for damages to Lease No. 28532 under LSA-R.S. 56:422 et seq., the Louisiana oyster statute. Although the lease was registered under the company name of Leathernecks, Mr. Keko filed suit in his own name. Chevron and Mr. Fennell excepted to this petition and four supplemental petitions on the grounds that Mr. Keko was not the correct party to bring suit as Leathernecks owned the lease in question. The trial court, after allowing Mr. Keko to amend his complaint to state a claim, dismissed his action because he did not allege that he was the owner of the lease in question. No appeal was taken.
On February 23, 1990, plaintiff filed the suit which gives rise to this appeal on behalf of Leathernecks. The plaintiff at this time asserted admiralty jurisdiction. Chevron and Mr. Fennell excepted to the petition on the grounds of prescription or, alternatively, laches. After a hearing, Commissioner and Judge Ad Hoc Rivet recommended that Leathernecks' suit against all parties be dismissed with prejudice. Judge Garvey adopted this report and dismissed Leathernecks' claims. The plaintiff has now brought this appeal asserting that admiralty jurisdiction exists and that the doctrine of laches does not bar this claim. We believe that these assignments of error are without merit.
Admiralty jurisdiction has as its primary function the protection of maritime commerce. Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Where maritime commerce is not implicated and where the exercise of admiralty jurisdiction could unnecessarily intrude upon state regulation of matters traditionally committed to local resolution, admiralty jurisdiction does not apply. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); Harville v. Johns-Manville Products Corp., 731 F.2d 775 (5th Cir.1984).
In a case similar to that at hand, a federal circuit court in Virginia found that the plaintiffs' oyster damage claims lacked maritime nexus. In Moore v. Hampton Roads Sanitation District Commission, 557 F.2d 1030 (4th Cir.1976), plaintiffs contended admiralty jurisdiction applied to their claim for damages caused their oyster beds as a result of improper operation of the City of Newport News' Sanitation system. The court held that admiralty jurisdiction did not exist over the plaintiffs' claims as the cultivation and harvesting of oysters from leases issued by the Commonwealth of Virginia was a purely local activity *496 subject to Virginia state law. It found that there was no maritime tort committed.
The concurrence in Moore, supra at 1036, cited Smith v. Maryland, 59 U.S. (18 How.) 71, 15 L.Ed. 269 (1855), where the U.S. Supreme Court upheld the right of states to regulate the harvesting of oysters within their territorial waters over an objection that such regulation was in conflict with Federal admiralty jurisdiction. Furthermore, jurisprudentially it has long been recognized that the states have sovereignty and title to the land underlying their navigable waters. Moore, supra.
As in Moore, supra, Louisiana had a broad statutory scheme that regulates the oyster industry. The Louisiana legislature has declared that the exploitation of its state's water bottoms for oyster purposes is subject to and governed exclusively by Title 56 of the Louisiana Revised Statutes. L.S.A.-R.S. 56:422 et seq.; State v. Powell, 515 So.2d 1085 (La.1987). The purpose behind this legislation is to "... establish, regulate and protect the oyster fishing industry in this state." Sinclair Oil & Gas Co. v. Delacroix Corp., 285 So.2d 845, 853 (La.App. 4th Cir.1973).
The Oyster Statutes confer upon the holder of a state oyster lease the exclusive privilege to exploit the state's water bottoms and reduce to possession oysters growing within the limits of the lease. If this privilege is disturbed by a third person, the Oyster Statute grants to the oyster lessee of public record the right to maintain an action for damages arising out of the wrongful injury to the lease.
Allowing the plaintiffs to proceed under admiralty law would undermine the statutory framework established by Louisiana to regulate the state's oyster industry.
The action of the trial court was not erroneous and the judgment is affirmed.
AFFIRMED.