WARD, Judge.
This matter originally came before this court in an application for supervisory writ filed by the plaintiff, Rodney Fox. That application asked this court to review and reverse the trial court’s denial of the plaintiffs request for permission to amend his petition and redesignate his case as one governed by maritime law. In an initial review we believed plaintiffs application did not have merit and this court declined to exercise its supervisory jurisdiction. Nevertheless, by order dated April 20, 1992, the Supreme Court of Louisiana granted the writ for certiorari and remanded to this court for briefing, argument, and opinion in light of the Admiralty Extension Act, 46 U.S.C.A.App. Section 740. 596 So.2d 542.
The writ application raises the question of whether an action for a vessel’s damage to an oyster bed falls under admiralty or under state law. We hold that an action for a vessel’s damage to an oyster bed falls under the authority of the state, not federal law. Thus, a jury trial is available to the plaintiff and the defense, under LSA-C.C.P. art. 1731(A).
In September of 1988, the M/V HIPPO towed the steel-laden barge JO-601 across the Gulf of Mexico. Before completing the voyage, however, one of the M/V HIPPO’s propellers became entangled in the tow line, forcing it to separate temporarily from JO-601 and anchor it while repairs were made. Before the M/V HIPPO could return, a hurricane arose and the barge JO-601 broke loose. Several days later, it was discovered stranded in the plaintiff’s oyster beds. Further damage was sustained when the defendant’s salvage vessels attempted to dislodge the offending barge. Mr. Fox brought suit in 1989 against the owners and operators of the salvage vessels, barge JO-601, and the M/V HIPPO. After an answer had been filed by the defendants, the plaintiff filed a Motion for Leave of Court to Amend his petition to admiralty jurisdiction and for a non-jury trial under LSA-C.C.P. art. 1732(6). This article provides that “a trial by jury shall not be available in ... a suit on an admiralty or general maritime claim under federal law brought in state court under a federal ‘saving to suitors’ clause, if the plaintiff has designated that suit as an admiralty or general maritime claim.”
In denying the plaintiff’s Motion to Amend, the trial court relied upon Pace v. Chevron, U.S.A., Inc., 579 So.2d 494 (La. Ct.App. 4th Cir.1991). The similarities between the present case and Pace are evident. The plaintiff in Pace asserted admiralty jurisdiction in his suit against Chevron, whose dredging operations caused damage to the plaintiff’s oyster beds. This court determined that admiralty jurisdiction did not apply, upholding the rights of the states to regulate the harvesting of oysters within their territorial waters. Pace, at 496. Pace does not conflict with previous court decisions as Fox contends. Historically, when a conflict has arisen between federal admiralty law and state law, the U.S. Supreme Court has given great deference to the authority of the state, recognizing the state’s “sovereignty and title to lands underlying navigable waters within its boundaries.” Moore v. Hampton Roads Sanitation, 557 F.2d 1030, 1036 (4th Cir.1976). See also Smith v. Maryland, 59 U.S. (18 How.) 71, 15 L.Ed. 269 (1855). The Pace court went one step further, concluding that to allow the plaintiff to proceed under admiralty law “would undermine the statutory framework established by Louisiana to regulate the state’s oyster industry.” Pace, 579 So.2d at 496.
The statutory framework referred to is Title 56 of the Louisiana Revised Statutes, section 422 et seq., also known as the “oyster statutes.” These statutes were enacted to establish, regulate, and protect *48 the oyster fishing industry of Louisiana. The legislature determined that the cultivation of oysters, as part of the livelihood and heritage of the state, was a subject area important enough to warrant specific state regulation. The Legislature’s acts were approved by the Courts, and, indeed, in State v. Powell, 515 So.2d 1085 (La.1987), our Supreme Court further solidified the importance of the state statutes by deciding that the exploitation of the states’ wat-erbottoms for oysters is governed EXCLUSIVELY by Title 56 of the Louisiana Revised Statutes.
The Pace court points to the focus of admiralty jurisdiction — the protection of maritime commerce. Where maritime commerce is not implicated, and where exercise of admiralty jurisdiction could unnecessarily intrude upon state regulation of matters traditionally committed to local resolution, admiralty jurisdiction does not apply. Pace, 579 So.2d at 495.
Even the plaintiff points to Title 56:423(B)(1) as the statute which creates the duty not to injure oyster beds. Plaintiff’s claim that defendants breached that duty rests solely under the Louisiana statutes. He cannot now claim admiralty jurisdiction.
While attempting to distinguish this case from Pace, the plaintiff suggests the application of the test proffered in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) supplemented by Kelly v. Smith, 485 F.2d 520 (5th Cir.1973) to determine whether a case falls under admiralty jurisdiction. However, in Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the Supreme Court clarified the Executive Jet test, comparing it with Foremost Insurance Co., v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) and in Sisson the court held that when admiralty jurisdiction is questionable, jurisdiction depends on 1) whether the incident is a potential hazard to maritime commerce, and 2) whether the hazard bears a substantial relationship to traditional maritime activity.
Even if the present case did not fall squarely under the Pace reasoning and the authority of Title 56 of the Louisiana Revised Statutes, it would clearly fail under the Supreme Court’s test.
Applying that test to these facts whether the lodging of JO-601 in oyster beds poses a hazard to maritime commerce is debatable. However, in applying the second part of the test, one must refer to Union Oil Co. v. Oppen, 501 F.2d 558 (9th Cir.1974) for clarification. The court in this case focused on the activity of the party injured, rather than the party injuring to determine the case’s maritime flavor. As we have seen, oyster bed claims have traditionally been classified as non-maritime activities, giving the states total authority over the cultivation and regulation of their submerged lands. Thus, the plaintiff fails to meet the criteria for the second prong of the test.
Turning now to the Admiralty Extension Act, 46 U.S.C.A.App. Section 740, we find that it was not the intention of Congress to preempt the states rights to regulate their oyster beds. The Act broadened maritime jurisdiction to include land injuries caused by a vessel on navigable water. However, the Supreme Court in Askew v. American Waterways Operators, Inc., 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973) discussed the history of the Act, noting that:
While Congress has extended admiralty jurisdiction beyond the boundaries contemplated by the framers, it hardly follows from the constitutionality of that extension that we must sanctify the federal courts with exclusive jurisdiction to the exclusion of powers traditionally within the competence of the States. One can read the history of the Admiralty Extension Act without finding any clear indication that Congress intended that sea-to-shore injuries be exclusively triable in the federal courts. Even though Congress has acted in the admiralty area, state regulation is permissible, absent a clear conflict with the federal law. Askew, 93 S.Ct. at 1600.
Thus, the states’ rights are not necessarily preempted by the Admiralty Extension Act, *49 and indeed, the state interests are clearly greater than the intended scope of the Act.
Given the enactment of statutes specifically tailored for oyster bed regulation, the historical deference that the courts have given states in regards to their submerged lands, and the fact that the Supreme Court refused to subrogate state law with the Admiralty Extension Act, we sustain the trial court’s denial of the plaintiffs Motion for Leave of Court to Amend.
AFFIRMED.