I MAMES F. McKAY III, Judge.
On May 2, 1996, fifty-three (53) oyster leaseholders with oyster leases on State water bottoms on the St. Bernard side of Breton Sound, and within Lake Borgne east of the Mississippi River Gulf Outlet (MRGO) filed suit against the State through the Department of Natural Resources (DNR), alleging adverse effects including oyster mortality, not only from the Caernarvon freshwater diversion structure, but also from the Violet siphon.[1]
*642 On January 11, 2002, the trial court heard seven motions in this case and later issued seven judgments, all of which were adverse to the DNR. The first of these was a partial summary judgment, which awarded $291,828,840.00 to plaintiffs with oyster leases located in the Breton Sound area east of the Mississippi River and west of MRGO in St. Bernard Parish; this judgment relied on Avenal v. State, 2001-0843, (La.App. 4 Cir. 10/15/03), 858 So.2d 697, writ granted, 2003-3521 (La.1/30/04), 864 So.2d 638, having res judicata effect in the | ^instant case.[2] The second judgment struck DNR’s right to a jury trial on the grounds that the plaintiffs’ claims were “admiralty and maritime” in nature. The third judgment, issued on January 22, 2002, denied the DNR’s motion to continue. A fourth judgment denied the DNR’s motion for summary judgment and peremptory exception based upon prescription. The three other rulings included the denial of the State’s motion for summary judgment seeking contractual indemnity, as well as a motion for summary judgment based upon collateral estoppel and takings theories, and a motion to enlarge or amend the State’s answer to the plaintiffs’ amended petition. The State sought to have these certified as final judgments for purposes of an immediate appeal. This relief was initially denied, but later the trial court designated the res judicata judgment as final, sua sponte. The plaintiffs’ remaining claims related to oyster leases in Lake Borgne and other outlying areas remained set for trial on January 20, 2002. For ease of administration, the remaining claims would be tried in two groups or “flights” of plaintiffs to be determined by the plaintiffs. The “first flight” would take place on January 20, 2002. The “second flight” trial would take place at a later date.
Prior to the trial of the “first flight,” the State discovered a memorandum from March 17, 1989, which had been prepared by Judge Manuel Fernandez, the presiding trial court judge, while he was an attorney working in the Governor’s Office; this document had directed the Louisiana Department of Wildlife and Fisheries (LDWF) to place an indemnity clause in the LDWF lease form in favor |3of the State. On the basis of this document, the State filed a motion to recuse Judge Fernandez. Judge Fernandez referred this motion to the Clerk of Court who randomly allotted the motion to Judge Robert A. Buckley. Judge BueWey ruled that the motion was untimely because it was filed after the first partial judgment on the res judicata issue. On review, this Court ruled that one memorandum, standing alone, was not sufficient basis for recusal.[3]
The “first flight” trial proceeded on January 24, 2002. After the evidence was presented, the trial court took the matter under advisement and on February 21, 2002, the trial court issued a partial judgment in favor of the 20 “first flight” plaintiffs in the amount of $226,528,221.00 plus interest, costs and attorney’s fees. This judgment awarded each plaintiff a uniform $8,441.00 per acre and a separate figure for loss of production based upon a uniform production rate, using the formula of the plaintiffs’ expert, Ed Cake, regardless of the plaintiffs’ actual production. Shortly thereafter, the DNR filed a motion to *643 have this partial judgment designated as final so that the DNR could seek an immediate appeal; this motion was denied in open court.
Prior to the commencement of the “second flight” trial, the State became aware that Judge Fernandez previously had an attorney-client relationship with Ed Robin, one of the plaintiffs in this case. The State also learned of the existence of another memorandum; this memorandum from the LDWF Secretary replied to Judge Fernandez’s earlier memorandum and indicated that the LDWF had ^implemented his instruction to insert the indemnity clause into the LDWF lease form. Thereafter, on March 15, 2002, the State filed a second motion to recuse Judge Fernandez. Judge Fernandez referred this motion to Judge Wayne Cre-sap, the duty judge on that day. Judge Cresap heard and denied the motion on March 21, 2002. On writs, this Court reversed because Judge Fernandez referred the motion directly to Judge Cresap rather than allowing it to be randomly allotted as required by La. C.C.P. art. 155(B). However, trial of the “second flight” also proceeded on March 21, 2002 and was completed within just a few days with the trial court taking the matter under advisement. On remand, the second motion to recuse was randomly allotted to Judge Buckley who on August 14, 2002 denied the motion as untimely because it was filed after two judgments, i.e., the first partial judgment and the motion for partial summary judgment on res judicata, and the second partial judgment related to the “first flight” plaintiffs. In response to Judge Buckley’s ruling, the DNR filed two separate writ applications. This Court remanded the motion to recuse for a second time to the district court for a hearing within 10 days of the order, which Judge Buckley set for October 29, 2002. Judge BucMey denied the motion to recuse on December 23, 2002.
On January 27, 2003, the DNR presented the trial court with a motion and order for appeal of the judgment related to the “first flight” of plaintiffs as well as the judgment related to the “second flight” of plaintiffs. The DNR also sought to have the trial court acknowledge the State’s statutory exemption from the filing of any bond. The trial court crossed out any right to appeal the judgment of February |fi21, 2002 related to the “first flight” of plaintiffs, the right to appeal any collateral or related rulings, and the State’s statutory exemption from filing the necessary bond. Thereupon, the State filed an application for a writ of mandamus to force the trial court to issue the appeal order for the judgment of February 21, 2002 on the “first flight” of plaintiffs and rescind the implied requirement that the State furnish a bond; the State also filed an application for supervisory writs and writs of review on the trial court’s denial of the motion to recuse. This Court granted most of the relief requested but the motion to recuse was deferred to the merits of the appeal.[4]
On appeal, the defendant’s raise the following assignments of error: 1) the trial court committed clear and manifest error finding any causative link between the Caernarvon freshwater diversion structure and any allegedly adverse effects to oyster leases in Lake Borgne, and also erred as a matter of law in the standard of proof for causation; 2) the trial court erred as a matter of law in failing to recognize that the plaintiffs had no legal right to recover from the State for the cost of restoring the State’s own water bottoms; 3) the trial court erred as a matter of law in allowing the plaintiffs to recover sums well in ex *644 cess of the fair market value of the plaintiffs’ oyster leases; 4) the trial court erred as a matter of law in identifying this matter as an “admiralty and maritime” claim when this matter had absolutely nothing to do with the maritime industry; 5) the trial court erred as a matter of law in refusing to recognize that the plaintiffs’ claims are time barred under three | ^potentially applicable prescriptive periods as well as the equitable doctrine of laches, even if the latter were applicable; 6) the trial court erred as a matter of law in refusing to recognize that the State should have been indemnified and held harmless by the plaintiffs for any claims made in this litigation; 7) the trial court erred as a matter of law in refusing to allow the State a jury trial; 8) the trial court erred as a matter of law in refusing to recognize the State’s reasonable use of the police power in inserting the indemnity clause in the subject oyster leases, requiring the State to be indemnified as a matter of law, and in pursuing coastal restoration as a priority for the good of the State; 9) the trial judge should have recused himself or been recused due to his roles as lawyer in the cause, fact witness, and former lawyer for the lead plaintiff, as well as due to bias, if not the totality of circumstances which suggest an appearance of impropriety; and 10) the trial court abused its discretion in its discovery and evidentiary rulings related to plaintiffs’ production of critical documents, the admissibility of expert testimony, and the admissibility of Dau-bert/Foret evidence.
Assignment of Error No. 9
The grounds for recusation of a judge are set forth in Louisiana Code of Civil Procedure article 151. Article 151 states:
A.A judge of any court, trial or appellate, shall be recused when he is a witness in the cause.
B. A judge of any court, trial or appellate, may be recused when he:
(1) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter’s employment in the cause;
(2) At the time of the hearing of any contested issue in the cause, has continued to employ, to represent him personally, |7the attorney actually handling the cause (not just a member of that attorney’s firm), and in this case the employment shall be disclosed to each party in the cause;
(3) Has performed a judicial act in the cause in another court;
(4) Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause; or to the spouse of an attorney, within the second degree; or
(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties’ attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
C. In any cause in which the state, or a political subdivision thereof, or a religious body or corporation is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body or corporation, is not a ground for recusation.
The list of grounds for recusal is exclusive, not illustrative, and there must be a statutory ground for recusing a judge. Pierce v. Charity Hosp., 550 So.2d *645 211, 215 (La.App. 4 Cir.1989). A mere appearance of impropriety, not statutorily listed in LSA-C.C.P. art. 151, cannot be a basis for recusal. Id. See also Chauvin v. Sisters of Mercy Health System, St. Louis, Inc., 2001-1834 (La.App. 4 Cir. 5/8/02), 818 So.2d 833, writ denied, 2002-1587 (La.9/30/02), 825 So.2d 1194. In the instant case, the State seeks to have Judge Fernandez recused for two reasons: 1) he formerly represented one of the plaintiffs in an unrelated case; and 2) while he was an attorney working in the Governor’s Office he authored a memorandum which directed the LDWF to place an indemnity clause in favor of the State into the LDWF lease form. That a judge has previously represented a party in an unrelated matter is not one of the grounds for recusation enumerated in LSA-C.C.P. art. 151. Therefore, the fact that Judge Fernandez previously represented Ed Robin in another case is no grounds for Judge Fernandez’s recusal. With regards to Judge Fernandez’s actions while working as an attorney in the ^Governor’s Office, it must be noted that he never played any role in the instant cause. In fact, the memorandum complained of by the defendants was drafted more than fifteen years before suit in the instant case was even filed. This action by Judge Fernandez back in 1989 cannot be viewed as his having been employed or consulted as an attorney in the cause. Accordingly, there are no grounds for Judge Fernandez’s re-cusal.
Assignments of Error No. 4 and No. 7
A cause of action falls within admiralty or maritime jurisdiction exercised jointly by the federal and state courts pursuant to 28 U.S.C. § 1333 if the activity which is the subject of the claim occurred in navigable waters and had a significant relationship to a traditional maritime activity. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). The United States Fifth Circuit Court of Appeals established a four prong test for determining whether there is a significant relationship to a traditional maritime activity: (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and type of injury; and (4) traditional concepts of the role of admiralty law. Kelly v. Smith, 485 F.2d 520 (5th Cir.1973). The United States Supreme Court has held that the initial inquiry is whether the activity has a potentially disruptive effect on maritime commerce. Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). The potential disruptive effect is to be determined by examining the general character of the activity, not the particular facts of the incident or the actual effect on maritime commerce. Id. Furthermore, for a tort to be maritime in nature, it must bear a significant relationship to | traditional maritime activity. Foremost Insurance Company v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).
 In the instant case, the damage to the plaintiffs’ oyster leases was allegedly caused by a land based freshwater diversion structure, operated in accordance with an operational plan and implemented on land. The Caernarvon project was designed for the dual purposes of enhancing oyster production and coastal restoration. Neither of these purposes appears to have a significant relationship to a traditional maritime activity. In fact, oyster bed claims have traditionally been classified as non-maritime activities, giving the states total authority over the cultivation and regulation of their submerged lands. Fox v. Southern Scrap Export Co., Ltd., 606 So.2d 46, 48 (La.App. 4 Cir.1992). Furthermore, where maritime commerce is not implicated, and where exercise of ad *646 miralty jurisdiction could unnecessarily intrude upon state regulation of matters traditionally committed to local resolution, admiralty jurisdiction does not apply. Pace v. Chevron, U.S.A., Inc., 579 So.2d 494, 495 (La.App. 4 Cir.1991). This is such a case. Accordingly, the trial court erred in identifying this matter as an admiralty and maritime claim when the matter had absolutely nothing to do with the maritime industry.
Because the trial court erred in identifying this matter as an admiralty and maritime claim, the trial court also erred in refusing to allow the State a jury trial. Louisiana Revised Statute 13:5105 specifically allows the State a right to a jury trial. As such, this matter should be remanded for a jury trial.
Assignments of Error No. 1, No. 2, No. 3, No. 5, No. 6, No. 8, and No. 10
Due to our findings regarding assignments of error numbers four and seven, these assignments of error are now moot.
|inDECREE
On the issue of Judge Fernadez’s recu-sal, we affirm the judgment of the courts below. However, in all other respects the judgment of the trial court is vacated. Furthermore, this matter is remanded for a jury trial.
AFFIRMED IN PART; JUDGMENT VACATED AND CASE REMANDED

. For a more detailed history of the Caernar-von freshwater diversion structure and the facts giving rise to the present litigation, see Avenal v. State, 99-0127 (La.App. 4 Cir. 3/3/99), 757 So.2d 1 (opinion on rehearing 3/15/00), 757 So.2d 1, 12 writ denied, 00-1077 *642 (La.6/23/00), 767 So.2d 41, Cert. denied sub nom. Louisiana Dep’t of Natural Resources v. Avenal, 531 U.S. 1012, 121 S.Ct. 568, 148 L.Ed.2d 486 (11/27/00) and Alonzo v.State, No.2002-CA-0527, 2004 WL 2112146, 884 So.2d 634.

. The appeal of this judgment is the subject of 2003-CA-0527.

. 2002-C-0198

. 2003-C-0188 c/w 2003-C-0209