h McKAY, Judge.
On January 7, 2005, the Louisiana Supreme Court vacated the judgment of this Court and remanded the instant matter for this Court to consider the State’s assertion of prescription and contractual indemnity in light of the Supreme Court’s decision in Avenal v. State, 2003-3521 (La.10/19/04), 886 So.2d 1085.[1] For a detailed account of the facts and procedural history giving rise to this matter, see Alonzo v. State ex rel. Dept. of Natural Resources, 2003-0553 (La.App. 4 Cir. 9/8/04), 884 So.2d 640 and Alonzo v. State ex rel. Dept. of Natural Resources, 2002-0527 (La.App. 4 Cir. 9/8/04), 884 So.2d 634.
Prescription
On May 20, 1996, the plaintiffs filed suit against the State through the Department of Natural Resources (DNR) for damages to their oyster leases caused by the Caer-narvon freshwater diversion structure and the Violet siphon. The Caernarvon structure was completed in 1991 while the Violet siphon was completed in the early 1980’s. The plaintiffs noticed damage to their leases shortly thereafter. The DNR contends that the plaintiffs’ claims are prescribed under the ^following theories of law: (1) the three-year prescriptive period for inverse condemnation claims under La. R.S. 13:5111; (2) the two-year prescriptive period under La. 9:5624 when private property is damaged for a public purpose; and (3) the one-year period for tort claims under La. C.C. art. 3492.
The action for inverse condemnation provides a procedural remedy to a property owner seeking compensation for land allegedly damaged or taken in a constitutional sense against a governmental or private entity having the powers of eminent domain where no expropriation has commenced. State, Through Dept. of Transportation and Development v. Chambers Investment Co., Inc., 595 So.2d 598, 602 (La.1992). The prescriptive period for inverse condemnation begins to run from the discovery of the taking. Wynat Development Co. v. Bd. of Levee Com’rs for Parish of Orleans, 96-1983, p. 5 (La.App. 4 Cir. 5/30/97), 696 So.2d 163, 166. The plaintiffs in the instant suit were original parties plaintiff in Avenal v. State, 2003-3521 (La.10/19/04), 886 So.2d 1085. However, they withdrew their claims in that suit in order to file the present suit in May of 1996. Although the filing of Avenal on March 29, 1994 would have interrupted prescription on the plaintiffs’ claims for inverse condemnation, the Supreme Court in Avenal held that those plaintiffs’ claims were not for inverse condemnation because they stated no cause of action under La. R.S. 13:5111. The same is true for the plaintiffs in the instant case.
When private property is damaged for public purposes any and all actions for *1113 such damages are prescribed by the prescription of two years, which shall begin |3to run after the completion and acceptance of the public works. La. R.S. 9:5624. The language employed when construed in light of the purpose of the statute precludes any suit being brought after two years from the first occurrence of any damage after the completion of the public works or simply the completion of the public works. Nuckolls v. Louisiana State Highway Department, 337 So.2d 313, 315 (La.App. 2 Cir.1976). In the instant case, the Caernarvon structure was completed in February of 1991 and dedicated in April of 1991. However, the plaintiffs did not file suit until May of 1996. Their claim for damages would be barred under La. R.S. 9:5624.
The prescriptive period for tort claims is one year. See La. C.C. art. 3492. Clearly, if five years have passed from the time the plaintiffs first noticed damage to their leases until the time they filed suit, their claims in tort are prescribed by the passage of one year.
Contractual Indemnity
A lease defines the respective rights and obligations of the parties so long as it does not affect the rights of others and is not contrary to the public good. Frey v. Amoco Production Co., 603 So.2d 166, 172 (La.1992). Insofar as indemnity is concerned, it is the terms of an indemnity agreement which govern the obligations of the parties. Meloy v. Conoco, Inc., 504 So.2d 833, 839 (La.1987). The general rules governing interpretation of contracts apply to indemnity agreements. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 757.
| ¿In the instant case, most of the leases at issue contain either a 1989 or 1996 indemnity clause. The leases either issued or renewed from 1989 to 1995 clearly state:
This lessee hereby agrees to hold and save harmless the State of Louisiana, its agents or employees, free and harmless from 'any claims for loss or damage to rights arising under this lease, from diversions of freshwater or sediment, depositing of dredged or other materials, or any other action taken for the purpose of management, reservation, enhancement, creation or restoration of coastal wetlands, water bottoms or related renewable resources; said damages to include, but not to be limited to, oyster beds, or decreased oyster production, due to siltation, pollution or other causes.
The indemnification provision within the Coastal Wetlands Restoration Advisory of the 1996 Clause,’ in pertinent part, states:
[F]urther, in consideration of the issuance of this lease, Lessee shall assume all liability and risk of loss, and agrees that this lease is subservient to all past, present or- future coastal restoration projects as described above. Lessee also agrees to indemnify and hold harmless ... any political subdivision which has implemented or may implement a coastal restoration project affecting this oyster lease as well as the State of Louisiana ... from and for all loss, damage, costs and/or expense in any way associated with this oyster lease ... arising out of, connected with, incident to, or directly or indirectly resulting from or related to diversion of freshwater or sediment, depositing of dredged spoil or other material or any other action taken pursuant to coastal restoration projects undertaken by the State....
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. Diefenthal v. Long Vue Manage *1114 ment Corp., 561 So.2d 44, 51 (La.1990). The agreement in the instant case is narrowly tailored to hold the State harmless only for those claims which may arise from certain types of coastal restoration projects, including freshwater diversion structures which are designed to restore and recreate Louisiana’s coastal wetlands. Clearly, the indemnification provision | .^contained in the leases signed by the plaintiffs envisions that the State be held harmless for claims advanced by the plaintiffs herein. Furthermore, in Avenal v. State, 2003-3521, pp. 18-24 (La.10/19/04), 886 So.2d 1085, 1099-1103, the Louisiana Supreme Court held that the 1989 and 1996 clauses contained in those plaintiffs’ oyster leases required that the State be indemnified. Accordingly, we find that the State should be indemnified and held harmless from the damage claims of any plaintiff whose lease contains either a 1989 or a 1996 clause.
DECREE
For the foregoing reason, we reverse and vacate the judgment of the trial court in favor of the plaintiffs and enter judgment in favor of the defendant, dismissing plaintiffs’ claims with prejudice.
REVERSED.

. 2004-C-2469 (La.1/7/05), 891 So.2d 9.