643 So.2d 792 (1994)
Todd WILLIAMS
v.
David REISS, M.D., and Elmwood Industrial Medical Center.
No. 94-CA-0672.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
*793 Richard Ducote, Fine & Associates, New Orleans, for plaintiff-appellant.
Ambrose K. Ramsey, III, Law Offices of Richard E. Birtel, Metairie, for defendants-appellees.
Before PLOTKIN, JONES and LANDRIEU, JJ.
PLOTKIN, Judge.
Plaintiff Todd Williams (Williams) appeals the dismissal of his suit on an exception of prematurity. The issue for review is whether this is an admiralty case governed by federal law or a medical malpractice action subject to the Louisiana Medical Malpractice Act. For the following reasons, we conclude that this is a medical malpractice case and thus affirm the trial court's granting of defendants' exception of prematurity.
Williams filed suit against Dr. David Reiss (Dr. Reiss) and his employer, Elmwood Industrial Medical Center (hereinafter collectively referred to as "defendants"), on August 10, 1993. According to his petition, Williams injured his back on January 28, 1991 while working as a deckhand on a commercial tugboat operating on the Mississippi River. The injury occurred when Williams pulled a wire while attempting to tie a barge to the tugboat. Williams asserted that his injury occurred because Dr. Reiss failed to warn Williams that he had a back condition.
According to Williams's petition, Dr. Reiss examined Williams on two occasions prior to his injury. On June 19, 1989, Dr. Reiss *794 conducted a pre-employment physical that allegedly revealed a narrowing of the L5-S1 disc space of Williams's spine. Dr. Reiss allegedly failed to inform Williams about his back condition. Dr. Reiss examined Williams a second time in November 1990, after Williams injured his back while working on a tugboat. The second examination allegedly revealed further narrowing at both L4-5 and L5-S1. Dr. Reiss allegedly instructed Williams to return to full duty in December 1990, once again failing to warn Williams of the risks associated with his back condition. Williams returned to work and subsequently suffered the injury giving rise to this action.
Williams asserted that his suit was cognizable in admiralty under the saving to suitors clause. See 28 U.S.C. § 1333 (1992). The basis for admiralty jurisdiction was that Williams's injury occurred on a navigable waterway and that defendants were engaged in a maritime medical practice. Williams's petition set forth the following allegations pertaining to defendants' maritime activities:
6. At all times relevant herein, Defendants Reiss and Elmwood were engaged in the practice of occupational and industrial medicine, and held themselves out as providing evaluations and treatment of seamen such as Plaintiff. These Defendants had extensive and specialized experience in the maritime industry, particularly tugboats, and professed specialized expertise in diagnosing and treating injuries to Jones Act seamen, including the provision of "cure" to such seamen.
7. The work of these Defendants in the provision of evaluations of seamen, and in providing "cure" to seamen was an integral part of the maritime commerce engaged in by Plaintiff's employer, and other such marine employers.
8. At all times relevant herein, Plaintiff and Defendants had a physician-patient relationship such as to obligate Defendants to warn Plaintiff of any occupational dangers within their knowledge and to otherwise provide competent evaluation and treatment.
9. At all times relevant herein, Defendants knew that their evaluations and treatment of Plaintiff directly affected his work as a deckhand aboard a tugboat on navigable waters.
10. At all times relevant herein, Defendants were evaluating and treating Plaintiff for the specific purpose of determining Plaintiff's ability to work as a deckhand aboard a tugboat on navigable waters, and for the specific purpose of providing "cure" as defined by maritime law.
On October 20, 1993, defendants filed an exception of prematurity, arguing that under the Louisiana Medical Malpractice Act ("the Act"), Williams was required to proceed before a medical review panel prior to filing suit against defendants. Williams filed an opposition on December 14, 1993 in which he argued that his case was not a medical malpractice action, but rather a maritime tort action governed by federal maritime law. A hearing on defendants' exception was held December 17, 1993. Judgment was rendered January 10, 1994, granting defendants' exception of prematurity.
Williams brought this appeal, arguing that the state statutory scheme requiring medical malpractice review prior to filing suit cannot encumber his right to sue under federal maritime law. We hold that this case is not within admiralty jurisdiction, and even if it were, Williams would still be required to proceed before a medical review panel in accordance with the Louisiana Medical Malpractice Act.
The Louisiana Medical Malpractice Act provides in pertinent part that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section." La.R.S. 40:1299.47(B)(1)(a)(i). It is undisputed that defendants were covered under the Act. Thus, unless Williams is correct in arguing that this is a federal maritime case that is not subject to the Act, Williams must proceed before a medical review panel prior to filing suit against defendants. See, e.g., Derouen v. Kolb, 397 So.2d 791, 794 (La.1981); Thomas v. LeJeune, Inc., 501 So.2d 1075, 1076 (La.App. 2d Cir.1987).
*795 In order for his case to fall within admiralty jurisdiction, Williams must satisfy the two-part test established by the United States Supreme Court in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454, 467 (1972), Foremost Ins. Co. v. Richardson, 457 U.S. 668, 673, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300, 305 (1982), and Sisson v. Ruby, 497 U.S. 358, 361-62, 110 S.Ct. 2892, 2895-96, 111 L.Ed.2d 292 (1990): (1) there must be a "maritime locality," i.e., the injury must occur on or over navigable waters; and (2) there must be a "maritime nexus," i.e., a significant relationship between the wrong and traditional maritime activities involving navigation or commerce on navigable waters. In declining to find admiralty jurisdiction over a commercial airline accident that occurred in a navigable waterway, the Executive Jet Court stated:
"The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution.... Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined."
Executive Jet, 409 U.S. at 272-73, 93 S.Ct. at 506-07 (quoting Victory Carriers, Inc. v. Law, 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971)). The Court then explained:
In the situation before us, which is only fortuitously and incidentally connected to navigable waters and which bears no relationship to traditional maritime activity, the [state] courts could plainly exercise jurisdiction over the suit, and could plainly apply familiar concepts of [state] tort law without any effect on maritime endeavors.
Id. at 273, 93 S.Ct. at 507. Williams's claims, which are medical malpractice in nature and are only fortuitously and incidentally connected to maritime activities, fail to meet the two-part test of Executive Jet.
The only basis in this case for meeting the "maritime locality" requirement is that the last act necessary to give rise to Williams's cause of action occurred on navigable water. Under similar circumstances, the federal Fifth Circuit, in Miller v. Griffin-Alexander Drilling Co., 873 F.2d 809 (5th Cir.1989), concluded that the locality requirement was not met, explaining:
[T]he plaintiff in today's case seeks to bootstrap his claim into federal court by arguing that his condition merely worsened onboard the ship. The flaw in the argument, however, is that the alleged medical malpractice did not take place on navigable waters as it did in Parker [v. Gulf City Fisheries, Inc., 803 F.2d 828 (5th Cir.1986)], Watz [v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir.1970)] and Jig the Third [v. Puritan Marine Ins. Underwriters Corp., 519 F.2d 171 (5th Cir.1975)].
The stated purpose of the [Admiralty Extension] Act[, 46 U.S.C.App. § 740,] was to correct inequities and not to create new causes of action. If the doctors committed medical malpractice, there is a common-law remedy in state court. We see no reason for expanding admiralty jurisdiction to cases with such scant involvement of maritime locations.
Id. at 812; see also Harrison v. Glendel Drilling Co., 679 F.Supp. 1413, 1420 (W.D.La.1988). To conclude that Williams satisfies the locality requirement, where he was examined and treated on land would require expansion of admiralty jurisdiction beyond that contemplated by the Fifth Circuit in Miller.
In addition to failing to meet the locality requirement, Williams does not meet the "maritime nexus" requirement. In determining maritime nexus, courts consider the following factors: (1) the impact of the event on maritime shipping and commerce; (2) the desirability of a uniform national rule to apply to such matters; and (3) the need for admiralty expertise in the trial and decision of the case. Molett v. Penrod Drilling Co., 826 F.2d 1419, 1426 (5th Cir.1987); Harrison, 679 F.Supp. at 1420; Fox v. Southern Scrap Export Co., 618 So.2d 844, 847 (La. 1993).
*796 First, there must be an impact of the event on maritime shipping and commerce. In Harrison, the court concluded that an act of medical malpractice did not have an impact on maritime shipping and commerce, stating:
The activity involved in defendants' claimsa seaman receiving medical treatment from a private land-based physicianis not itself a form of maritime activity. The treating physician is not a ship's doctor. The function and roles of the parties involved are those of any land-based doctor-patient relationship. Certainly, a land-based physician does not engage in maritime business simply because during the course of his regular practice he treats a patient who happens to be an off-duty seaman.
679 F.Supp. at 1420-21. In this case, Williams's allegations that defendants specialized and held themselves out as experts in the evaluation of seamen might provide a viable basis for finding an impact on maritime shipping or commerce. Faulty medical evaluations and treatment of seamen would appear to have a direct impact on the duty of cure, and would thus impact maritime shipping and commerce. However, even if Williams could satisfy the maritime impact requirement, he cannot satisfy the remaining two prongs of the maritime nexus test.
Second, there must be a need or desirability for a uniform national rule. The pertinent jurisprudence establishes that regulation of medical malpractice claims is a matter of local concern that traditionally has fallen within the jurisdiction of state courts. For example, in Harrison, the court stated:
[I]t is nationally recognized that the standards of medical malpractice are a matter of local and state concern. "We can find absolutely no support for the proposition that an ordinary, private, on-shore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been consistently held that it is state law which controls in cases such as this." * * * On the contrary, the facts and authorities establish and recognize the need for local and state control of medical malpractice claims. The Louisiana Legislature has expressed its special interest in providing for the uniform treatment of medical malpractice claims brought against health care providers qualified to practice in Louisiana. See La.R.S. 40:1299.41 et seq.

Id. at 1420-21 (citations omitted; italics in original). Similarly, in Miller, the federal Fifth Circuit found no need for uniformity of law over a medical malpractice claim that arose in Louisiana, stating that "[w]e are in fact convinced that finding admiralty jurisdiction for medical malpractice suits with no more relationship to maritime activities and dangers than is presented here would clearly violate principles of federalism and advance no federal interest."[1] 873 F.2d at 813; see also Joiner v. Diamond M Drilling Co., 677 F.2d 1035, 1038 (5th Cir.1982). As Miller, Harrison, and the cases cited therein make clear, it would require serious derogation from traditional concepts of medical malpractice law to conclude that there is now a need to establish a uniform national rule concerning any form of medical malpractice, even one related to maritime shipping.
Third, there must be a need for admiralty expertise. No such need is present in this case. Rather, the record in this case demonstrates a need for medical expertise only. Based on Williams's petition, a medical review panel composed of physicians knowledgeable in Dr. Reiss's field of practice will serve as an ideal mechanism for making an initial determination of whether Dr. Reiss's treatment of Williams fell below the applicable standard of care.
Having failed to meet the locality and nexus requirements, Williams's suit does not fall under admiralty jurisdiction. Ultimately, the same considerations that motivated the United States Supreme Court to reach its decision in Executive Jet require that this court hold that Williams' claim is not cognizable *797 in admiralty. Executive Jet involved the crash of an airplane into Lake Erie after seagulls became caught in the plane's jet engines. Plaintiffs brought suit in admiralty, arguing that the air traffic controller had been negligent in failing to warn them about the seagulls. The Supreme Court concluded that admiralty jurisdiction was lacking, noting that the injury to the plaintiffs (the air traffic controller's negligence) occurred while plaintiffs were still on land, and it was only fortuitous that plaintiffs' plane should come to rest in Lake Erie. 409 U.S. at 251-52, 273, 93 S.Ct. at 496-97, 507. Much the same is true with respect to Williams's suit. Although Dr. Reiss may have been negligent in treating Williams and that negligence may have been the cause-in-fact of Williams's injuries,[2] it is only mere happenstance that Williams's injury came about through work in maritime employment. Williams could just have easily have injured himself while engaged in personal activities, in which case there clearly would be no basis for the exercise of admiralty jurisdiction.
Moreover, even if this case did fall within admiralty jurisdiction, application of federal maritime law does not preclude application of state law to supplement any interstitial gaps in maritime law. See Fox, 618 So.2d at 847 (concluding that Louisiana's oyster statutes may be applied when not in conflict with federal maritime law). As mentioned above, regulation of medical malpractice has traditionally been reserved to the states; consequently there is no federal legislation or admiralty common law pertaining to recovery in medical malpractice. In Seoane v. Ortho Pharmaceuticals, Inc., 472 F.Supp. 468 (E.D.La.1979), aff'd, 660 F.2d 146 (5th Cir.1981), the federal district court for the Eastern District of Louisiana concluded that the medical review panel provision was a substantive rule of law that had to be applied by a federal court in a diversity case. Id. at 471. Even if this case does fall under federal admiralty jurisdiction, this substantive rule of law should be applied to fill in the gaps in federal maritime law. Thus, regardless of whether this case falls within admiralty or state court jurisdiction, Williams must proceed before a medical review panel prior to filing suit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] In a footnote to this sentence, the Miller court emphasized its point by stating: "Taking federal jurisdiction of the instant medical malpractice suit, an area traditionally controlled by state law, would disturb the balance of federalism and extend the reach of admiralty law many leagues beyond its intended borders." 873 F.2d at 813 n. 9.
[2] Questions that have not been raised and that we express no opinion on at this time.