111 P.3d 1258 (2005)
Khung Thi LAM, individually, and as personal representative of the estate of Cuong T. Dang, and as guardian ad litem of Andy Tuan Dang, a minor Appellant.
v.
GLOBAL MEDICAL SYSTEMS, INC., P.S., d/b/a Maritime Health Services, a Washington corporation; Raymond Jarris, M.D., and his marital community, and Dale Gowen, M.D., and his marital community, Respondents.
No. 54116-1-I.
Court of Appeals of Washington, Division 1.
May 23, 2005.
*1259 Jeffrey Cowan, Attorney at Law, Seattle, WA, for Appellant.
Jerret E. Sale, Deborah Lynn Carstens, Shawn M. Yates, Bullivant Houser Bailey PC, Seattle, WA, for Respondents.
ELLINGTON, A.C.J.
¶ 1 Cuong Dang was a seaman employed on a fishing trawler. While the vessel was in the Bering Sea, Dang became ill. Ships' officers consulted physicians in Seattle for medical advice. Dang died aboard the trawler, and his widow brought this wrongful death action alleging medical negligence against the physicians and their employer, Global Medical Systems.
¶ 2 In this case of first impression in Washington, the principal issue is the appropriate standard of care for a medical negligence claim asserted under the Death on the High Seas Act (DOHSA).[1] We hold that the physicians and their employer owed a duty of care to Dang and that Washington law supplies the appropriate standard of care. Because an issue of material fact exists as to whether this duty was breached, we reverse.

BACKGROUND
¶ 3 Global Medical Systems (GMS) is a Washington corporation which contracted with American Seafoods Company (ASC) to provide medical consultation services to ASC vessels. In late January 2001, Cuong Dang, a 37-year-old fish processor, was working aboard the Northern Eagle, an ASC factory trawler operating in the Bering Sea. He became ill. Because there was no physician on board, the ship's purser and designated medical officer, LeeAnn Duncan, telephoned GMS for advice.
¶ 4 Duncan first contacted GMS on January 31 to report Dang's symptoms and seek advice. Duncan then called GMS physicians Dale Gowan and Raymond Jarris three times on February 1, reporting Dang's worsening condition and requesting treatment recommendations. During the first call of that day, Dr. Gowan recommended against evacuation on the grounds Dang's condition did not warrant the expense of diverting the ship. In the early evening, when Duncan called again to report that Dang was incoherent, combative and disoriented, Dr. Gowan recommended Valium. Four hours later, Duncan reported to Dr. Jarris that she could not awaken Dang. Dr. Jarris told Duncan to continue the Valium to "keep [Dang] mellow"[2] and that Dang was feigning unresponsiveness. When Duncan said that the ship would be diverting to St. Paul's to evacuate Dang, Dr. Jarris recommended Dang be turned over to the police, in the belief that Dang was psychotic.
¶ 5 The following morning, the ship's captain called Dr. Jarris to report that Dang had suffered respiratory arrest and that 20 minutes of CPR had not resuscitated him. Dr. Jarris recommended ceasing CPR. Cuong Dang died at approximately 9.30 a.m. on February 2, 2001.
¶ 6 An autopsy revealed that Dang died from diabetic ketoacidosis, a complication related to diabetes type I. On board the Northern Eagle was a test to indicate the possibility of diabetes, and the means for preliminary treatment of ketoacidosis. United States Coast Guard services were available to evacuate Dang to a medical facility had they been requested.
¶ 7 Khung Thi Lam, Dang's wife, filed this action against GMS and Drs. Gowan and Jarris, claiming wrongful death and medical negligence.[3] GMS moved for summary judgment *1260 on grounds that DOHSA preempted state wrongful death or survival causes of action or, in the alternative, limited claims to the beneficiaries' pecuniary losses, and that the doctors owed no duty of care to Dang. Lam argued that DOHSA did not apply. The trial court granted GMS' motion without comment on March 18, 2004, and dismissed the complaint with prejudice. Lam appeals. We apply the usual standard of review for summary judgments.[4]

DISCUSSION
¶ 8 Death on the High Seas Act. Congress enacted the Death on the High Seas Act in 1920, creating an action for wrongful death occurring on the high seas:
[W]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State... the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.[[5]]
¶ 9 DOHSA thus creates a wrongful death action arising from the negligence of any "vessel, person or corporation."[6] DOHSA preempts state wrongful death and survival statutes, and provides the exclusive remedy[7] for deaths on the high seas.[8]
¶ 10 The parties now agree that DOHSA applies to Lam's claim, that recovery under DOHSA is limited to the beneficiaries' pecuniary losses, and that state courts have concurrent jurisdiction to hear DOHSA claims.[9]
¶ 11 Applicability of State Law. DOHSA is a wrongful death statute, premised on the existence of a claim under other law. DOHSA authorizes suits for damages for negligence against the entity which would have been liable if death had not ensued.[10] DOHSA thus authorizes an action for medical negligence against these defendants in state court. The question is what law supplies the applicable standard of care.
¶ 12 State law may be applied so long as it does not contravene the essential purpose of an act of Congress, or work material prejudice to the characteristic features of the general maritime law, or interfere with the proper harmony and uniformity of that law.[11]
¶ 13 As relevant here, the parties dispute whether chapter 7.70 RCW defines the standard of care for maritime medical negligence actions where the care was rendered by Washington physicians practicing in Washington *1261 As discussed below, application of the state statutory standard does not contravene the legislative purpose, is consistent with the characteristic features of the general maritime law, and poses no threat to its proper harmony and uniformity.
¶ 14 Duty. As a preliminary matter, GMS makes several arguments to the effect that it owed no duty to Dang. We must resolve this question first, for if there is no duty, standard of care is irrelevant. GMS first argues that the only duty to Dang was that of the ship owner, who has a non-delegable duty to care for seamen who fall ill during a voyage. While this description of the shipowner's duty is correct,[12] it is irrelevant to the existence of a duty on the part of the doctors. Nothing in DOHSA, the Jones Act, or general maritime law limits the remedies of an injured seaman to an action against the ship owner. Indeed, DHOSA provides for an action against "the vessel, person, or corporation which would have been liable if death had not ensued."[13] The fact that the ship owner has a non-delegable duty does not mean no other independent duty can arise.[14]
¶ 15 GMS next contends that the doctors had no duty to Dang because they did not speak to, advise, or examine Dang. This argument is unavailing.[15] Physical contact with the patient is not an absolute prerequisite.
¶ 16 The existence of a duty is a question of law.[16] Numerous courts have found a duty of care when the physician's only involvement has been through telephone consultations (particularly where, as here, a doctor had a contractual duty to provide services). For example, in Hand v. Tavera,[17] a duty of care arose where the doctor's involvement with the patient's care involved a telephone consultation only. The court was particularly influenced by the fact that the physician was under contract to provide services to insured patients like the plaintiff.[18]
¶ 17 Here, GMS had a contract to provide medical consultation to ASC vessels, and Drs. Jarris and Gowan fulfilled that contract by giving instructions and advice in the care of Dang over the course of the three days prior to his death. Dr. Gowan admitted that his role was to render consultation and provide advice, and transcriptions of the conversations between the doctors and the ship reveal that the doctors indeed gave specific advice and instructions regarding Dang's treatment. Dr. Gowan instructed Duncan to "hydrate" Dang, then later told her to "run the current [IV] but then stop it after that," and administer diazepam.[19] Dr. Jarris suggested Dang should be on a 24-hour watch, and should have Valium administered every six hours. This undisputed activity is amply sufficient to create a duty of care.[20]
*1262 ¶ 18 Standard of Care. GMS argues that a general maritime standard of care applies, apparently in the belief that this standard requires personal contact between physician and patient before a duty of care arises,[21] and thus defeats Lam's action. For her part, Lam contends the standard set forth in Washington's medical malpractice statute, chapter 7.70 RCW, should govern.[22] We agree with Lam that Washington law provides the underlying standard of care in this action.
¶ 19 Only two cases have referenced a national maritime standard of care. Both involved American seamen treated by physicians in other countries. Fitzgerald v. A.L. Burbank & Company[23] was a Jones Act case brought by a seaman injured by negligent medical treatment ashore. The court acknowledged that traditionally, the "locality rule" applies to medical malpractice cases, "so that a physician is held only to the standard of care existing in the area in which he practices."[24] But the seaman had been treated in Bahrain, and the court held the standard should be "free from geographical requirements" because proving the standard of care of the medical profession "in some far distant land" was an unreasonable burden for the seaman.[25] The court described the standard as "the degree of care and skill of the average qualified practitioner of the art and science of medicine."[26] In a similar case, the Fitzgerald approach was held applicable where care was rendered in rural India.[27]
¶ 20 In no case has a so-called maritime standard been applied to physicians practicing in the United States. GMS is a Washington corporation, and Drs. Jarris and Gowan were licensed and practicing in Washington. Application of the state standard of care to these defendants is consistent with the essential purpose of DOHSA, to provide remedies to the seaman for negligence.
¶ 21 Nor does application of the state standard work prejudice to maritime law. Indeed, Congress has mandated reference to state malpractice laws in a similar context. In 1996, Congress enacted a statute requiring application of relevant state law in medical malpractice cases against vessel owners:
In a suit by any person in which the operator or owner of a vessel or employer of a crewmember is claimed to have vicarious liability for medical malpractice with regard to a crewmember occurring at a shoreside facility, and to the extent the damages resulted from the conduct of any shoreside doctor, hospital, medical facility, or other health care provider, such operator, owner, or employer shall be entitled to *1263 rely upon any and all statutory limitations of liability applicable to the doctor, hospital, medical facility, or other health care provider in the State of the United States in which the shoreside medical care was provided.[28]
Congress thus required resort to state medical malpractice statutes. This is clear recognition of the states' interests in regulating physicians practicing within their borders.
¶ 22 Finally, application of the state standard does no violence to the harmony and uniformity of maritime law. This question depends upon a balancing of the state and federal interests involved.[29] Courts have recognized the importance of state interests in regulating physicians who treat patients involved in maritime commerce. In Williams v. Reiss,[30] a seaman sued his onshore physician after a shipboard injury to his back, which his physician had failed to warn was weak. The court held there was no need or desirability for a uniform national rule, noting that "regulation of medical malpractice has traditionally been reserved to the states; consequently there is no federal legislation or admiralty common law pertaining to recovery in medical malpractice."[31] The court concluded "it would require serious derogation from traditional concepts of medical malpractice law to conclude that there is now a need to establish a uniform national rule concerning any form of medical malpractice, even one related to maritime shipping."[32]
¶ 23 In Miller v. Griffin-Alexander Drilling Company,[33] the court rejected admiralty jurisdiction for an onshore physician's treatment of an off-duty seaman, noting that there was no need for a uniform national rule to apply to land-based medical treatment, and that "it is nationally recognized that the standards of medical malpractice are a matter of local and state concern."[34]
¶ 24 Washington has strong interests in regulating physicians licensed and practicing within its borders, wherever the patient is located. These interests include ensuring the competence of physicians and the quality of care; the speedy and efficient resolution of actions; and the protection of health care providers from frivolous claims.[35] These interests in turn are closely tied to the equally strong interest in controlling malpractice insurance rates and ultimately the cost of health care.[36]
¶ 25 Harmony and uniformity both are assured by DOHSA's exclusive and limited remedy.[37] There appears to be no similar federal interest to be protected by prohibiting reference to the state standard of care. Turning to state law for the definition of standard of care does no violence to uniformity; if it did, Congress would not have enacted 46 U.S.C.A. § 183(g). We conclude that the Washington medical malpractice statute, chapter 7.70 RCW, is the proper source for the underlying standard of care for Lam's DOHSA claim.[38]

CONCLUSION
¶ 26 We hold that the physicians owed Dang a duty of care as a matter of law, and *1264 that the state standard of care applies to this action. Whether this duty of care was breached is a question of fact. Summary judgment was improper.
¶ 27 Reversed and remanded.
WE CONCUR: SCHINDLER and KENNEDY, JJ.
NOTES
[1] 46 U.S.C.A. app. § 761 (2000).
[2] Clerk's Papers at 87.
[3] Lam also sued Dang's employer, ASC, in federal court for claims under the Jones Act, the Death on the High Seas Act and general maritime law. The parties settled the case for $750,000.
[4] We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c).
[5] 46 U.S.C.A. app. § 761(a) (2000).
[6] Id.
[7] See Garofalo v. Princess Cruises, Inc., 85 Cal. App.4th 1060, 1075, 102 Cal.Rptr.2d 754 (2000) (litigants prohibited from supplementing DOHSA claims with separate state law claims); Vo v. Yamaha Golf Car Co., 267 Ga.App. 742, 743, 600 S.E.2d 594 (2004) (DOHSA preempts actions for injuries and pain and suffering under state law).
[8] Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) ("[DOHSA] announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival and damages"); Dooley v. Korean Air Lines Co., Ltd., 524 U.S. 116, 123, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998) ("By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas.").
[9] 46 U.S.C.A. app. § 762 (2000); Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 232, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986).
[10] 46 U.S.C.A. app. § 761 (2000).
[11] Paul v. All Alaskan Seafoods, Inc., 106 Wash. App. 406, 411, 24 P.3d 447 (2001) (quoting Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)).
[12] DeZon v. Am. President Lines, 318 U.S. 660, 667, 63 S.Ct. 814, 87 L.Ed. 1065 (1943).
[13] 46 U.S.C.A. app. § 761 (2000).
[14] See, e.g., Bertram v. Freeport McMoran, Inc., et al, 35 F.3d 1008, 1011 (5th Cir.1994) (oil rig worker sued his employer, under the Jones Act; the vessel owner, for unseaworthiness; and a third party contractor, for negligence).
[15] Lam concedes that GMS did not have a physician-patient relationship with Dang, but contends GMS is a health care provider under chapter 7.70 RCW. This court is not bound by a party's incorrect concession. State v. Knighten, 109 Wash.2d 896, 902, 748 P.2d 1118 (1988).
[16] Zenkina v. Sisters of Providence in Washington, Inc., 83 Wash.App. 556, 560, 922 P.2d 171 (1996).
[17] 864 S.W.2d 678, 679 (Tex.App.1993).
[18] Id. We reject GMS' argument (for which it cites no authority) that its contract with ACS controls the analysis of whether GMS or the doctors had an independent duty to Dang. See also Bienz v. Central Suffolk Hospital, 163 A.D.2d 269, 270, 557 N.Y.S.2d 139 (1990) (telephone call to physician's office sufficient to establish physician-patient relationship); Cogswell by Cogswell v. Chapman, 249 A.D.2d 865, 866-67, 672 N.Y.S.2d 460 (1998) (same); McKinney v. Schlatter, 118 Ohio App.3d 328, 692 N.E.2d 1045, 1050-51 (1997) (finding physician-patient relationship between patient and on-call physician consulted over the telephone who participated in diagnosis and treatment of patient); Millard v. Corrado, 14 S.W.3d 42, 51 (Mo.App.1999) (same).
[19] Clerk's Papers at 74, 82.
[20] GMS argues that because ACS retained control of Dang's medical treatment, Drs. Gowan and Jarris were not in a position to make decisions regarding Dang's care. While the precise character of events is for the jury, the transcribed conversations indicate that ACS merely followed the doctors' advice, and the doctors did make decisions through their involvement in diagnosis and treatment.
[21] GMS offers no authority for this proposition.
[22] The relevant provisions of Washington's medical malpractice statute are as follows:

No award shall be made in any action or arbitration for damages for injury occurring as the result of health care which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:
(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care.
RCW 7.70.030.
The following shall be necessary elements of proof that injury resulted from the failure of the health care provider to follow the accepted standard of care:
(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;
(2) Such failure was a proximate cause of the injury complained of.
RCW 7.70.040.
[23] 451 F.2d 670 (2nd Cir.1971).
[24] Id. at 680.
[25] Id. Fitzgerald advocated adoption of a general standard of care for all admiralty cases. So far as we can determine, no court has done so since Fitzgerald was decided in 1971.
[26] Id.
[27] Osorio v. Waterman S.S. Corp., 557 So.2d 999, 1009 (La.App.1990) (court cites Fitzgerald, but ultimately applies a gross negligence standard because that the claim was for punitive damages).
[28] 46 U.S.C.A. app. § 183(g) (1996) (emphasis added).
[29] Paul, 106 Wash.App. at 418, 24 P.3d 447.
[30] 643 So.2d 792 (La.App.1994).
[31] Id. at 797.
[32] Id. at 796.
[33] 685 F.Supp. 960 (W.D.La.1988).
[34] Id. at 964; see also Harrison v. Glendel Drilling Co., 679 F.Supp. 1413, 1420 (W.D.La.1988) (no need for uniform rule for onshore medical treatment of seamen because medical malpractice is a matter of local and state concern); Wood v. Standard Products Co., Inc., 456 F.Supp. 1098, 1103 (E.D.Va.1978) (facts and authorities establish and recognize need for local and state control of medical malpractice claims).
[35] Workman v. Chinchinian, 807 F.Supp. 634, 642 (E.D.Wash.1992).
[36] Truck Ins. Exchange v. Tetzlaff, 683 F.Supp. 223, 226 (D.Nev.1988) (discussing choice of law between California and Nevada in medical malpractice case).
[37] 46 U.S.C.A. app. §§ 761, 762 (2000).
[38] Whether other aspects of chapter 7.70 RCW are preempted by DHOSA are issues not before us.