IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PHYLLIS PAETSCH, | ) | |
| | ) | No. 30688-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPOKANE DERMATOLOGY CLINIC, | ) | UNPUBLISHED OPINION |
| P.S., as a Washington Corporation; and | ) | |
| WILLIAM P. WERSCHLER, M.D., | ) | |
| individually, | ) | |
| | ) | |
| Respondents. | ) | |

KORSMO, C.J. — Phyllis Paetsch was injured by cosmetic injections in her forehead that caused necrosis. The trial court dismissed part of her claim and a jury found for the defense on the remainder of the case. Concluding that there was no reversible error, we affirm.

FACTS

Ms. Paetsch contacted Spokane Dermatology Clinic, P.S., for cosmetic services in early 2007. She sought elective cosmetic facial injections to help her look more rested. The clinic's receptionist recommended a mix of Botox and "filler," and set up an appointment for her.

On the day of the appointment the clinic informed Ms. Paetsch that she would be seeing Dan Rhoads for her procedures. Mr. Rhoads is a certified physician's assistant (PA-C), but Ms. Paetsch was not informed of his provider status. Ms. Paetsch also filled out patient forms that identified the clinic's owner, Dr. William Werschler, as her doctor. She admittedly never had any expectation of seeing Dr. Werschler and did not know who he was until days after her injections.

The clinic also gave Ms. Paetsch forms that were intended to obtain her informed consent to have Botox and the filler—Restylane—injected into her face. The Restylane form mentioned several common complications and side effects associated with the product, but did not mention the complication that Ms. Paetsch eventually suffered: necrosis/impending necrosis. The Restylane form also seemed to suggest that the Restylane would only be put to Federal Drug Administration (FDA)-approved uses.

The forms made no mention of where Ms. Paetsch would receive the injections. However, the receptionist and Mr. Rhoads led Ms. Paetsch to believe that she would be receiving the Botox in the glabellar region (lower forehead) and the Restylane around her naso-labial folds (laugh lines around the mouth).

When Mr. Rhoads came into the treatment room he answered some questions for Ms. Paetsch about Botox and then started into the procedure. Midway through, Rhoads announced that he had extra Restylane left over and made a decision to inject it into Ms. Paetsch's glabellar region. He did not seek additional permission to use the remaining

2

Restylane in this manner and did not inform Ms. Paetsch of the increased risk of necrosis associated with injecting Restylane into the glabellar region.

Mr. Rhoads did not inform Ms. Paetsch of this additional risk because it was unknown to him at the time and also largely unknown to most providers of cosmetic injections. Mr. Rhoads was also unaware that Restylane was not FDA-approved for use in the glabellar region.[1]

Shortly after returning home she began to experience redness and tightness in her glabellar region. This adverse reaction quickly progressed to blistering sores and green pustules. Ms. Paetsch returned for treatment of this adverse reaction. Mr. Rhoads diagnosed the reaction as an infection and provided follow-up care consistent with treating an infection.

The care did not work and Ms. Paetsch looked elsewhere for treatment. She eventually found a provider who correctly diagnosed the complication as a necrosis. The Restylane had expanded to such a degree that it constricted the only source of blood flowing to the skin on Ms. Paetsch's forehead. By that time the necrosis had left deep scarring and had progressed to the point that it was too late to reduce the scarring.

Ms. Paetsch thereafter sued the clinic and Dr. Werschler for failure to obtain informed consent and for medical negligence by both Dr. Werschler and Mr. Rhoads. Dr.

---

[1] Restylane was still fairly new in 2007, but today carries a warning on its label against its use in the glabellar region.

3

Werschler brought a pretrial CR 56 motion for summary judgment. The motion was denied, but the ruling had the effect of clarifying the claims so that Dr. Werschler was relieved from any direct liability stemming from the cosmetic procedures. Following the presentation of the evidence, Dr. Werschler brought a CR 50 motion for judgment as a matter of law. The court granted the motion. Although the court's ruling precluded the jury from holding Dr. Werschler personally liable, the instructions permitted the jury to hold the clinic liable for any medical negligence by Dr. Werschler.

After ruling on the CR 50 motion, the court selected the jury instructions. Over Ms. Paetsch's objection, the court chose to use the standard of care and exercise of judgment instructions drafted by the clinic.

The court also prohibited any mention of the CR 50 ruling during the parties' closing arguments. Defense counsel failed to abide by this ruling, but the court declined to declare a mistrial based on the error. The jury then entered deliberations and returned a defense verdict. Afterward, Ms. Paetsch brought a motion for new trial, which the court denied. She then timely appealed to this court.

## ANALYSIS

Ms. Paetsch presents a number of issues for review. First, she argues that the trial court erred as a matter of law by releasing Dr. Werschler from the case. Second, she argues that the court erred while instructing the jury on the applicable standard of care. Third, she argues that the court abused its discretion by giving an exercise of judgment

4

instruction. Fourth, she argues the court abused its discretion by not declaring a mistrial after defense counsel violated the order prohibiting mention of Dr. Werschler's release from liability. Fifth, she argues the court abused its discretion by not granting a new trial on the issues of informed consent. We address each of these issues in turn.

## CR 50 and 56 Rulings

The superior court dismissed Dr. Werschler from direct liability because Ms. Paetsch failed to establish a legal duty arising from the existence of a doctor-patient relationship. The existence of a physician's duty of care is a question of law that we review de novo. *Lam v. Global Med. Sys., Inc.*, 127 Wn. App. 657, 664, 111 P.3d 1258 (2005). This court also reviews rulings on CR 50 and 56 motions de novo. *Faust v. Albertson*, 167 Wn.2d 531, 539 n.2, 222 P.3d 1208 (2009).

We agree that there was no evidence to support a finding that Dr. Werschler had a doctor-patient relationship with Ms. Paetsch or that she contracted with him to personally perform her cosmetic injections. The record shows that all the material terms of the agreement that Ms. Paetsch had with the clinic were oral, including the identity of Mr. Rhoads as her treatment provider. All contract negotiations were conducted by clinic staff, not Dr. Werschler. Furthermore, Ms. Paetsch's failure to object to having someone who was not Dr. Werschler perform her procedure was an objective manifestation of her intent to accept the clinic's offer to have Mr. Rhoads perform the procedure.

5

Ms. Paetsch argues that medical and other professional services contracts are personal and nonassignable; thus, Dr. Werschler could not delegate performance to Mr. Rhoads. *Deaton v. Lawson*, 40 Wash. 486, 490, 82 P. 879 (1905). This argument ignores the fact that Ms. Paetsch contracted with the clinic, not Dr. Werschler. While *Deaton* suggests that a business cannot contract to provide medical services, any argument to that effect was abrogated when the legislature enacted chapter 18.100 RCW. *See Columbia Physical Therapy, Inc., PS v. Benton Franklin Orthopedic Assoc., PLLC*, 168 Wn.2d 421, 430, 228 P.3d 1260 (2010) (observing that the corporate practice of medicine doctrine was abrogated in part by RCW 18.100.030(1)).

Ms. Paetsch also argues that a duty existed for Dr. Werschler to provide Ms. Paetsch with appropriate follow-up care, relying on *Lam*. There a seaman fell ill while underway, but died despite the boat's medical officer's attempts to assist him. *Lam*, 127 Wn. App. at 660. To help Mr. Lam, the medical officer contacted two physicians employed by Global Medical Systems. *Id.* These physicians gave the medical officer a diagnosis and treatment advice tailored to Lam's ailment—a diagnosis and advice which eventually proved erroneous. *Id.* at 660-61. The doctors later tried to escape liability by arguing that a doctor-patient relationship and resulting duty of care cannot arise when the doctors have never met the patient or provided any direct care. *Id.* at 664. This court disagreed, holding that physical contact is not a prerequisite to triggering a physician's

duty of care; it was enough that the doctors had been intimately involved in directing Lam's diagnosis and treatment prior to his death. *Id.* at 665.

This case is unlike *Lam*. Dr. Werschler never provided Mr. Rhoads with a diagnosis, treatment advice, or any other consultation relating to Ms. Paetsch's care. The record shows that at some point during the follow-up period Mr. Rhoads made a remark to Dr. Werschler about the strange case he had in Ms. Paetsch, but nothing else. There is nothing to suggest that Dr. Werschler gave any response to the comment or otherwise involved himself in a way that would have triggered a legal duty on his part. Furthermore, Dr. Werschler had no supervisory responsibility over Mr. Rhoads. That duty belonged to Dr. Smith who was never made a party to this case.

<u>Standard of Care Instruction</u>

"We review the court's choice of jury instructions for abuse of discretion." *State v. Butler*, 165 Wn. App. 820, 835, 269 P.3d 315 (2012). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The legal accuracy of an instruction is reviewed de novo; "an erroneous statement of the law is reversible error where it prejudices a party." *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 635, 244 P.3d 924 (2010). "Jury instructions are sufficient if they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." *Id.* (quotation marks omitted).

7

Because Dr. Werschler did not owe a duty of care the trial court could not have erred by inadequately instructing on a physician's standard of care. Even if the court needed to instruct the jury on a physician's standard of care, instruction 9, patterned off 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 105.02 at 589 (2012) (WPI), adequately informed the jury on the applicable standard of care for both physicians and certified physician's assistants who hold themselves out as dermatology specialists. Although the court's instruction was not as detailed as Ms. Paetsch desired, she does not explain how she was prevented from arguing her theory of the case.[2] Thus, we have no basis for finding an abuse of discretion.

### Exercise of Judgment Instruction

The court's instruction number 11, patterned off WPI 105.08, informed the jury that a physician or PA-C is not liable for selecting one of two or more alternative *courses of treatments*. Ms. Paetsch argues that this instruction should not have been given because Mr. Rhoads did not have more than one acceptable alternative *diagnosis* for the complication that she suffered. We decline to address this argument because Ms. Paetsch failed to preserve it for review.

---

[2] Ms. Paetsch also argues that she was denied an instruction on the PA-C standard of care. We disagree. Instruction 9 held both physicians and PA-Cs to the same standard—that of a dermatological specialist. She does not suggest that some lesser standard was appropriate.

The court gave the alternative courses of *treatment* version of the instruction, not the alternative *diagnoses* version. While defense counsel argued in closing as though the instruction given was the alternative diagnoses version, Ms. Paetsch waived this argument because she did not object. *See, e.g., State v. Thompson*, 169 Wn. App. 436, 484-85, 290 P.3d 996 (2012) (holding that a party's failure to object to improper closing argument waives the issue on appeal).

## Improper Remarks During Closing

Ms. Paetsch next challenges defense counsel's improper remarks during closing. We agree that defense counsel's reference to the clinic being the only defendant remaining violated the court's prior order prohibiting mention of the CR 50 motion. However, the error was harmless.

The clinic could not have been held responsible for Dr. Werschler's failure to act because as a matter of law he did not owe her a duty of care. The only way that the jury could have found for Ms. Paetsch was by finding that Mr. Rhoads was negligent, but the fact that Dr. Werschler did not owe her a duty of care had no bearing on whether Mr. Rhoads was negligent. Furthermore, any observant juror would have noticed Dr. Werschler's excusal from the case. Throughout the trial the jurors were told of the negligence of the plural "defendants." When it came time to instruct the jury, the verdict forms referred only to the singular "defendant." Accordingly, the comment could not have had any discernible effect.

9

No. 30688-7-III
*Paetsch v. Spokane Dermatology Clinic*

## Motion for New Trial

Finally, Ms. Paetsch argues that the court erred by not ordering a new trial based on failure to obtain informed consent. We review a court's refusal to grant a new trial for an abuse of discretion. *Riley v. Dep't of Labor & Indus.*, 51 Wn.2d 438, 444, 319 P.2d 549 (1957). However, we review the decision de novo when the order is predicated on a question of law. *Tarabochia v. Johnson Line, Inc.*, 73 Wn.2d 751, 757, 440 P.2d 187 (1968).

Ms. Paetsch's arguments focus on the lack of evidence to support a finding that she gave informed consent to be treated by Mr. Rhoads and to the off label use of Restylane in her glabellar region. Assuming that Ms. Paetsch did not give such consent, her argument still fails. A claim premised on failure to obtain informed consent requires proof that off label use of the product and the identity of her treatment provider as a PA-C versus a physician were material facts that would have caused a reasonably prudent person under similar circumstances to not consent to the treatment. RCW 7.70.050(1)(a),(c). Ms. Paetsch points to no evidence in the record that would suggest that a person in February 2007 would have attached significance to these facts or based their treatment decision on knowledge of them. Accordingly, the trial court did not err in refusing to grant the motion for new trial.

10

No. 30688-7-III
*Paetsch v. Spokane Dermatology Clinic*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____          _____
Brown, J.                                                      Fearing, J.