# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

HERBERT HEINTZ and BARBARA
HEINTZ, husband and wife,

        Appellants,

        v.

JP MORGAN CHASE BANK,
NATIONAL ASSOCIATION, and
QUALITY LOAN SERVICE
CORPORATION OF WASHINGTON,
trustee,

        Respondents.

No. 70628-4-I

DIVISION ONE

UNPUBLISHED

FILED: June 16, 2014

Cox, J. — After defaulting on a promissory note secured by a deed of trust, the borrower filed suit claiming the lender increased the monthly payment in violation of terms of the note and the successor trustee under the deed of trust lacked authority to schedule a nonjudicial foreclosure sale. Because no genuine issue of material fact appears in the record and the lender and successor trustee are entitled to judgment as a matter of law, we affirm the orders dismissing the complaint.

In October 2007, Herbert and Barbara Heintz (Heintz) obtained a one million dollar loan to refinance their home from Washington Mutual Bank FA by means of a promissory note and a deed of trust to secure the note. In December 2012, Heintz filed a complaint to restrain a nonjudicial foreclosure sale and for restitution for breach of the loan agreement against Quality Loan Service Corp. of

Washington (Quality) as the successor trustee and JP Morgan Chase Bank NA (Chase) as the successor to Washington Mutual. Heintz claimed that the note provided for a fixed minimum monthly payment for five years and that Chase breached the terms of the note by increasing the monthly payment amount, wrongfully claiming a default, and then directing commencement of a foreclosure on the deed of trust. Heintz later amended the complaint to allege that "they have never received a Notice of Default, as required by RCW 61.24.030 and .031; with respect to the foreclosure sale the trustee set for November 16, 2012."

Chase filed a CR 12(b)(6) motion to dismiss the complaint, arguing that Heintz failed to state a claim upon which relief could be granted because the plain undisputed terms of the note allow for changes to the minimum monthly payment during the first five years. Quality filed a CR 56 motion for summary judgment dismissal based on evidence showing it mailed to Heintz a notice of default in October 2010, pursuant to former RCW 61.24.030 (2010).

The parties stipulated to a hearing on the motions without oral argument. The trial court granted Chase's motion to dismiss and Quality's motion for summary judgment.

Heintz appeals.

## SUMMARY JUDGMENT

We review de novo both a summary judgment order and the propriety of a trial court's dismissal of an action under CR 12(b)(6).[1] In reviewing a summary

---

[1] Lam v. Global Med. Sys., Inc., 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005); Dave Robbins Constr. v. First American Title Co., 158 Wn. App. 895, 899, 249 P.3d 625 (2010).

judgment order, we view the facts and reasonable inferences in the light most favorable to the nonmoving party.[2] We may affirm an order granting summary judgment if there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.[3] Under 12(b)(6), dismissal is proper only if "it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery."[4] In making this determination, the court presumes the plaintiff's allegations to be true and "may consider hypothetical facts not included in the record."[5] If materials "outside the pleadings are presented to and not excluded by the court," the CR 12(b)(6) motion is treated as a summary judgment motion under CR 56.[6]

As below, Heintz claims on appeal that Chase raised the monthly payment in violation of the terms of the note providing a "moratorium" preventing any change to the monthly payment amount for five years. We disagree.

In a section entitled "4. INTEREST RATE AND MONTHLY PAYMENT CHANGES," the note provides in pertinent part:

> (E) Payment Change Dates
> Effective every year commencing DECEMBER 01, 2008, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my minimum monthly payment, subject to Section 4(F) below, and I will make payments

---

[2] Lam, 127 Wn. App. at 661 n.4.
[3] CR 56(c).
[4] Tenore v. AT&T Wireless Services, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998).
[5] Id.
[6] CR 12(b)(6).

in this new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.
(F) Monthly Payment Limitations
Unless Section 4(H) and 4(I) below apply, the amount of my new minimum monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

...

(H) Limit on My Unpaid Principal; Increased Minimum Monthly Payment
My unpaid principal can never exceed a maximum amount equal to 115% of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 115% limitation, I will begin paying a new minimum monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new minimum monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at my interest rate in effect the month prior to the payment due date in substantially equal payments.
(I) Required Full Monthly Payment
On the fifth anniversary of the due date of the first monthly payment, and on that same day every fifth year thereafter, my minimum monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).[7]

The unambiguous terms of the note provide for the annual recalculation of the monthly payment beginning after the first year of the loan. And the "payment cap" merely limits the extent of each change to a 7 ½ percent increase or decrease from the previous monthly payment until December 1, 2012, the fifth anniversary of the due date of the first monthly payment. Heintz fails to identify any language in the note preventing annual changes to the minimum payment in the first five years. Because the reasonable meaning of the words in the note

---

[7] Clerk's Papers at 114.

demonstrate the objective intent of the parties, we will not consider extrinsic evidence offered by Heintz to support the claim of a different intent.[8]

Although Heintz did not specifically claim that Chase breached the terms of the note by increasing the monthly payment by more than 7 ½ percent, to the extent the court considered such hypothetical facts to be encompassed within the broad language of the complaint, dismissal under CR 12(b)(6) would have been inappropriate. But Chase presented copies of letters sent to Heintz between 2008 and 2011 listing the new monthly payment calculated for each Payment Change Date, none of which exceeds the previous payment by more than 7 ½ percent. And the record indicates that the trial court did not exclude the evidence. Heintz failed to respond with any evidence to raise a genuine issue for trial as to whether Chase breached the terms of the note. Because dismissal of Heintz's claim against Chase was proper under CR 56, the trial court did not err.

For the first time on appeal, Heintz claims that other terms of the note are illusory, vague, and incomprehensible. These arguments contradict Heintz's position below and were not properly preserved. We will not consider them.[9]

Heintz next contends that a genuine issue of fact for trial exists whether Quality violated the Deeds of Trust Act, chapter 61.24 RCW. Heintz acknowledges receiving a notice of default in 2010 and a notice of a February 2011 sale, which was never held. But Heintz claims the act required Quality to

---

[8] Hearst Communications, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503-04, 115 P.3d 262 (2005).
[9] RAP 2.5(a); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

5

issue a new notice of default before issuing the second notice of sale in November 2012. We disagree.

In 2010, the act required the trustee to provide a written notice of default to the borrower at least 30 days before issuing a notice of sale.[10] The act also provided time limits for the notice of sale and required the trustee to conduct the sale within 120 days of the original sale date or it would lose the authority to sell without issuing a new notice of sale.[11] But Heintz fails to identify any authority for the claim that Quality lost its authority to act on the 2010 notice of default. And no evidence before the trial court suggested that Heintz cured the default. The trial court properly granted summary judgment to Quality.

## ATTORNEY FEES

Heintz and Chase each request an award of attorney fees under the terms of the deed of trust. The instrument provides, "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." As the prevailing party, Chase is entitled to an award of fees under this provision.

Accordingly, we award Chase attorney fees and costs, subject to Chase's compliance with RAP 18.1.

---

[10] Former RCW 61.24.030(8) (2010).
[11] Former RCW 61.24.040 (2010); <u>Albice v. Premier Mortgage Services of Washington, Inc.</u>, 174 Wn.2d 560, 568, 276 P.3d 1277 (2012).

We affirm the summary judgment order and award attorney fees to Chase, subject to its compliance with RAP 18.1.

_Cox, J._

WE CONCUR:

_Trickey, J_          _Leach, J._

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2014 JUN 16 AM 9:55